IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ALDO ALVAREZ (2022-0525095), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 24 C 4668 |
| v. | ) | |
| | ) | Hon. Manish S. Shah |
| KYLE HUBER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Plaintiff's application for leave to proceed *in forma pauperis* [3] is granted. The Court orders the trust fund officer at Plaintiff's place of incarceration to deduct $32.60 from Plaintiff's account for payment to the Clerk of Court as an initial partial payment of the filing fee and to continue making monthly deductions in accordance with this order. The Court directs the Clerk of Court to send (electronically if possible) a copy of this order to the trust fund officer at Plaintiff's current place of incarceration and to the Court's Fiscal Department. Summons, however, shall not issue. Plaintiff's complaint is dismissed without prejudice for failure to state a federal claim. If he wants to proceed with this case, Plaintiff must submit a proposed amended complaint consistent with this order by September 6, 2024. Failure to do so will result in entry of judgment against Plaintiff. Plaintiff's motion for attorney representation [4] is denied without prejudice. The Clerk is directed to send Plaintiff a copy of this order and a blank amended complaint form. Plaintiff also must promptly submit a change-of-address notification if he is transferred to another facility or released. If Plaintiff fails to keep the Court informed of his address, this action will be subject to dismissal without further warning.

**STATEMENT**

Plaintiff, Aldo Alvarez, a detainee at the Cook County Jail, brings this *pro se* civil rights lawsuit, 42 U.S.C. § 1983, concerning alleged violations of his Fourth Amendment rights stemming from a traffic stop and his subsequent arrest. Now before the Court are Plaintiff's complaint for initial review, application for leave to proceed *in forma pauperis*, and motion for attorney representation.

Plaintiff has demonstrated that he cannot prepay the filing fee, and thus, his application for leave to proceed *in forma pauperis* is granted. Pursuant to 28 U.S.C. § 1915(b), the Court orders: (1) Plaintiff to immediately pay (and the facility having custody of him to automatically remit) $32.60 to the Clerk of Court for payment of

the initial partial filing fee and (2) Plaintiff to pay (and the facility having custody of him to automatically remit) to the Clerk of Court twenty percent of the money he receives for each calendar month during which he receives $10.00 or more, until the $350 filing fee is paid in full. The Court directs the trust fund officer to ensure that a copy of this order is mailed to each facility where Plaintiff is housed until the filing fee has been paid in full. All payments shall be sent to the Clerk of Court, United States District Court, 219 South Dearborn Street, Chicago, Illinois 60604, attn: Cashier's Desk, 20th Floor, and should clearly identify Plaintiff's name and the case number assigned to this case.

Under 28 U.S.C. § 1915A, the Court is required to screen prisoners' complaints and dismiss the complaint, or any claims therein, if the Court determines that the complaint or claim is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against an immune defendant. *See Jones v. Bock,* 549 U.S. 199, 214 (2007); *Turley v. Rednour,* 729 F.3d 645, 649 (7th Cir. 2013).

Plaintiff alleges that on May 24, 2022, at about 8:24 p.m., he was a front-seat passenger in a female friend's vehicle. (Pl.'s Compl., Dkt. No. 1, at pg. 4.) As the vehicle was traveling south on Hamlin Avenue approaching the intersection with Wellington Avenue, Plaintiff saw about seven police vehicles that appeared to be conducting an "investigatory stop" of some people that Plaintiff knew. (*Id.*) Those people yelled for the driver of the vehicle in which Plaintiff was traveling to turn on her headlights, which she did. (*Id.*)

At this point, an unmarked police vehicle containing four officers began to "pursue" the vehicle in which Plaintiff was traveling. (*Id.*) Officers activated their police lights and pulled over the vehicle. (*Id.*) The four officers then conducted a traffic stop. (*Id.*)

Officer Carlos Vera asked the driver if she had heard the other individuals yell for her to turn on her lights. (*Id.* at pg. 5.) She told him that she did not know what he was talking about, and that her headlights had been on. (*Id.*) The officer looked at the headlights and then asked to see her driver's license and registration. (*Id.*) When she provided it, officers asked Plaintiff for identification. (*Id.*) Plaintiff gave Officer Kyle Huber his identification through the front passenger window. (*Id.*)

The officers checked the identification, and it came back "clear." (*Id.*) Officer Huber then asked Plaintiff why the vehicle smelled like marijuana, and Plaintiff told him that he had smoked earlier in the day before riding in the vehicle. (*Id.*) Both Officer Huber and Officer Vera told Plaintiff to get out of the vehicle because they wanted to search it, to which both Plaintiff and the vehicle's driver objected. (*Id.*) Officer Vera had his hand on his weapon, and Plaintiff was scared, so he stepped out of the vehicle. (*Id.*)

2

Officers patted Plaintiff down and searched the vehicle, discovering a firearm under the front seat. (*Id.*) Officer Huber then handcuffed Plaintiff and patted him down again, finding drugs in the front pocket of his pants. (*Id.* at pgs. 5-6.) Plaintiff subsequently was charged with armed violence and has been jailed for about two years. (*Id.* at pg. 6.)

The Fourth Amendment prohibits unreasonable searches and seizures. *See Young v. City of Chicago*, 987 F.3d 641, 644 (7th Cir. 2021). As alleged, however, Plaintiff has not described a violation of his Fourth Amendment rights.

First, as to the traffic stop, Plaintiff acknowledges that the driver of the vehicle was driving toward a group of police officers conducting an investigatory stop with her headlights off and that she flipped them on when an acquaintance shouted at her to do so. A police officer may stop a vehicle if the officer has reasonable suspicion of a traffic violation. *United States v. Cole*, 21 F.4th 421, 427 (7th Cir. 2021). This includes even minor traffic infractions. *United States v. Jackson*, 962 F.3d 353, 357 (7th Cir. 2020).

Illinois law requires the use of headlights during the period from sunset to sunrise. *See* 625 ILCS 5/12-201(b). The Court takes judicial notice, that, according to the National Oceanic and Atmospheric Administration, sunset occurred at approximately 8:13 p.m. in Chicago on May 24, 2022. *See* NOAA ESRL Sunrise/Sunset Calculator, https://gml.noaa.gov/grad/solcalc/sunrise.html (last visited July 11, 2024). The facts alleged by Plaintiff, then, indicate that police had reasonable suspicion to stop the vehicle in which he was traveling for operating with its headlights off after sunset.

Next, as to the search of the vehicle, a passenger ordinarily does not have an expectation of privacy in a vehicle if the passenger does not have a possessory interest in it. *See United States v. Rodriguez-Escalera*, 884 F.3d 661, 667 (7th Cir. 2018). Plaintiff does not allege any facts indicating a possessory interest in his friend's vehicle, so it does not appear that he can raise a Fourth Amendment objection to the search.

Even if Plaintiff could challenge the search, his allegations do not raise an inference that it was unlawful. The automobile exception allows authorities to search a vehicle without a warrant if they have probable cause. *United States v. Jackson*, 103 F.4th 483, 486 (7th Cir. 2024). Probable cause exists when, based on the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Id.*

Plaintiff alleges in his complaint Officer Huber told him that he smelled marijuana, and that Plaintiff acknowledged having smoked before riding in the vehicle. Recreational consumption, possession, and sale of small amounts of cannabis

became legal in Illinois on Jan. 1, 2020. *Jackson v. Peon*, No. 22 CV 01726, 2023 WL 6198816, at *3 (N.D. Ill. Sept. 22, 2023) (citing 410 ILCS 705/10-5). Nonetheless, there are still "'(1) illegal ways to transport it, (2) illegal places to consume it, and (3) illegal amounts of it to possess.'" *Id.* (citing *People v. Molina*, 208 N.E.3d 579, 588 (Ill. App. Ct. 2022)). Among them, it is illegal to possess cannabis in a vehicle unless the drug is in a "secured, sealed or resealable, odor-proof, child-resistant cannabis container that is inaccessible." *Id.* (citing 625 ILCS 5/11-502.15).

In *Jackson*, 103 F.4th at 486, the court of appeals held that even post-legalization in Illinois, the smell of unburnt marijuana outside a sealed container alone was sufficient to support a finding of probable cause to search a driver and his vehicle. The court also favorably cited cases indicating that the smell of marijuana alone, burnt or unburnt, is sufficient to support a finding of probable cause. *See id.* at 488 (collecting cases); *see also United States v. Kizart*, 967 F.3d 693, 695 (7th Cir. 2020) (smell of burnt marijuana gave officer probable cause to search vehicle's passenger compartment). The court then observed that possession of marijuana remains illegal under federal law. *Id.* Given this precedent, Plaintiff has not alleged facts that indicate that police lacked probable cause to search the vehicle.

Next, Plaintiff acknowledges that upon searching the vehicle, police found a firearm under the front passenger seat and drugs in Plaintiff's possession. He does not allege any facts indicating that police lacked probable cause for his arrest or his ongoing detention. In any event, as to the latter, a Fourth Amendment claim for wrongful pretrial detention does not accrue until the detention ends. *Manuel v. City of Joliet, Illinois*, 903 F.3d 667, 670 (7th Cir. 2018).

For all these reasons, Plaintiff's complaint is dismissed without prejudice for failure to state a federal claim. Plaintiff may submit an amended complaint if he believes he can state a federal claim in light of the principles discussed in this order. *See Wade v. Barr*, 775 F. App'x. 247, 248 (7th Cir. 2019) (unpublished) (*pro se* plaintiffs must be given one chance to amend a complaint unless amendment would be futile).

Any amended complaint also must comport with Federal Rule of Civil Procedure 11; Rule 11 provides that by signing a pleading, a party represents to the Court that his claims are warranted by existing law and that the factual contentions have evidentiary support or likely will have evidentiary support after further investigation. Fed. R. Civ. P. 11(b). Plaintiff must write both the case number and the judge's name on the amended complaint, sign it, and return it to the Prisoner Correspondent. Plaintiff is cautioned that an amended pleading supersedes the original complaint and must stand complete on its own. Therefore, all allegations against all defendants must be set forth in the amended complaint without reference to the original complaint. Plaintiff is advised to keep a copy for his files.

      Plaintiff's motion for attorney representation is denied without prejudice. Although Plaintiff states that his ability to speak, write, or read English is limited (*see* Dkt. No. 4 at pg. 2), the complaint is written in clear and comprehensible English. It appears that Plaintiff is able to represent himself for now. The relevant facts are about his direct experience with the police officers, and all he needs to do at this stage is submit an amended complaint. Plaintiff may renew his motion if the case gets to a stage that is too complicated to manage on his own.

ENTER:

Date: August 2, 2024

                                                            Manish S. Shah
                                                            U.S. District Judge